United States District Court
Southern District of Texas

**ENTERED**

January 05, 2024

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NOMAR ENTERPRISES, LLC<br>d/b/a RUGGED DEPOT, LLC and<br>THIG, LLC d/b/a CIS,<br><br>    Plaintiffs,<br><br>v.<br><br>RUGGED SOLUTIONS AMERICA, LLC,<br><br>    Defendant.<br>_____<br><br>RUGGED SOLUTIONS AMERICA, LLC,<br><br>    Counterclaim Plaintiff,<br><br>v.<br><br>NOMAR ENTERPRISES, LLC<br>d/b/a RUGGED DEPOT, LLC and<br>THIG, LLC d/b/a CIS,<br><br>    Counterclaim-Defendants.<br>_____<br><br>RUGGED SOLUTIONS AMERICA, LLC,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>GEORGE COLLINS and<br>MS DISTRIBUTION, LLC,<br><br>    Third-Party Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § §<br><br>CIVIL ACTION NO. H-23-1794 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Nomar Enterprises, LLC d/b/a Rugged Depot, LLC,

and Thig, LLC, d/b/a CIS (collectively, "Plaintiffs" or "Sellers"),

bring this action against Defendant, Rugged Solutions of America, Inc. ("Defendant" or "RSA"), for breach of contract and fraudulent inducement.[1]  The claims in this case relate to an Asset Purchase Agreement ("APA") dated September 30, 2020, entered by RSA, Plaintiffs, MS Distribution LLC ("MSD"), and George Collins ("Collins" or "Sellers' Representative").[2]  RSA denies Plaintiffs' allegations, and asserts counterclaims for breach of contract and declaratory judgment against Plaintiffs, MSD, and Collins ("Counterclaim-Defendants").[3]  Counterclaim-Defendants deny the counterclaims.[4]

Pending before the court is Defendant/Counterclaim Plaintiff Rugged Solutions America, LLC's Motion for Partial Judgment on the Pleadings and Brief in Support ("RSA's Motion for Partial Judgment") (Docket Entry No. 26).  For the reasons stated below RSA's Motion for Partial Judgment will be granted in part and denied in part, and the parties will be ordered to submit their dispute over calculation of Adjusted EBITDA to the Independent Accountant within thirty (30) days.

---

[1]Claimants' First Amended Complaint, Docket Entry No. 14, pp. 10-11 ¶¶ 28-36.  Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]APA, Exhibit A to Claimants' First Amended Complaint, Docket Entry No. 15.

[3]Answer and Counterclaim of Rugged Solutions, America, LLC to Plaintiffs' First Amended Complaint, Docket Entry No. 19.

[4]Claimants' Response to Respondent's Counterclaim, Docket Entry No. 25.

## I.   Factual Allegations and Procedural Background

### A.   Factual Allegations

#### 1.   Plaintiffs' Claims Against RSA[5]

Plaintiffs allege that from January of 2020 through closing of the APA on September 30, 2020, RSA's representatives, Benjamin R. Wall II ("Wall") and Rhett McGraw ("McGraw") made numerous representations to Sellers' Representative, Collins, that were meant to induce them to enter the APA. The alleged representations include: (1) that during the first year after the closing RSA would continue operating the purchased companies as they were operated before the purchase;[6] (2) that additional agreed-to consideration would be paid via an Earn-Out Provision described in § 2.7 of the APA based on RSA's achievement of an Adjusted EBITDA target during a defined Earn-Out Period;[7] (3) that RSA would have complete discretion to operate the businesses as it saw fit using its business judgment, but would not take any action, directly or indirectly, for the primary purpose of reducing or eliminating the Earn-Out payment;[8] (4) that Adjusted EBITDA was defined in Exhibit

---

[5]This section is summarized from the "Factual Background" section of Claimants' First Amended Complaint, Docket Entry No. 14, pp. 2-10 ¶¶ 5-27.

[6]Claimant's First Amended Complaint, Docket Entry No. 14, p. 2 ¶ 8.

[7]Id. at 3 ¶ 11.

[8]Id.

2.7(a) to the APA to mean "earnings before interest, taxes, depreciation, and amortization, calculated in accordance with [Generally Accepted Accounting Principles (GAAP)] with [a number of] adjustments to the extent incurred during the Earn-Out Period;"[9] (5) that RSA would provide Sellers' Representative an Earn-Out report setting forth the Adjusted EBITDA, the amount of the Earn-Out payment, and all necessary supporting documentation;[10] and (6) that Sellers' Representative would have a period of time to review the Earn-Out Report during which he and his accountants would have reasonable access to RSA's relevant books and records.[11] Plaintiffs allege that they justifiably relied on each of these representations, that the representations were material and induced them to enter the APA,[12] and that the representations were made "knowingly or without any knowledge of the truth or falsity of the statements and with the intention of not performing the Representations at the time that each such Representation was made."[13]

---

[9]Id. at 4 ¶ 12 (quoting Exhibit § 2.7(a) to the APA, Docket Entry No. 15, p. 60).

[10]Id. at 5 ¶ 13.

[11]Id. ¶ 14.

[12]Id. at 5-6 ¶¶ 15-16.

[13]Id. at 11 ¶ 34.

Plaintiffs allege that on September 27, 2021, Collins placed an order with RSA in the amount of $1,204,646.53, for which RSA accepted payment, but then declined to finalize the sale and returned the payment.[14]  Plaintiffs allege that had RSA consummated the sale to Collins, RSA would have netted a gross profit in excess of nearly $1,000,000.00 that would have increased the Adjusted EBITDA and would have resulted in an Earn-Out payment of approximately $3,500,000.00.[15]  Plaintiffs allege that on December 27, 2021, RSA produced an Earn-Out Report, and that on January 26, 2022, Sellers' Representative notified RSA of his disagreement with the Earn-Out Report.[16]  Plaintiffs allege that RSA has failed to comply with the APA by producing the necessary documentation and records needed to support the Earn-Out Report, and that RSA has refused to provide reasonable access to the books and records that they need to confirm the Earn-Out calculation for themselves.[17]  Plaintiffs also allege that within a year of executing the APA, RSA reorganized the companies thus changing the way they operated and decreasing the Earn-Out payment.[18]  Plaintiffs allege that RSA's actions substantively and materially breached the APA, and damaged them in the amount of at least $4,500,00.00.[19]

---

[14] Id. at 7 ¶ 19.

[15] Id. at 7-8 ¶ 20.

[16] Id. at 6-7 ¶¶ 17-18.

[17] Id. at 8-9 ¶ 22.

[18] Id. at 9 ¶¶ 23-24.

[19] Id. at 9-10 ¶¶ 25-26.

2.   <u>RSA's Answer, Affirmative Defenses, and Counterclaims Against Plaintiffs, MS Distribution and Collins</u>[20]

RSA alleges that pursuant to the APA entered with Plaintiffs, MSD, and Collins, it paid over $13,000,000.00 to purchase certain assets defined by the APA.[21] RSA alleges that § 2.7 of the APA gave Plaintiffs the opportunity — but no guarantee — to receive an additional $4,500,000.00 if RSA achieved Adjusted EBITDA targets during an Earn-Out Period.[22] RSA alleges that at the end of the Earn-Out Period, § 2.7(a) of the APA required it to deliver to Collins, as Sellers' Representative, "a report setting forth Adjusted EBITDA and the amount of the Earn-Out (the "Earn-Out Report") and all documentation necessary to support the Earn-Out Report."[23] RSA alleges that under § 2.7(c) of the APA Collins had 30 days from receipt of the Earn-Out Report to provide written notice of disagreement with its Adjusted EBITDA calculation "set[ting] forth in reasonable detail the nature of [any] disagreement and Seller Representative's proposed resolution of such disagreement ('Seller's Earn-Out Calculation')."[24] RSA alleges that upon notice of dispute, § 2.7(c) of the APA provides that

---

[20]This section summarizes the "Factual Background" section of RSA's Answer and Counterclaim of Rugged Solutions America, LLC to Plaintiffs' First Amended Complaint, Docket Entry No. 19, pp. 17-27 ¶¶ 25-74.

[21]<u>Id.</u> at 17 ¶ 25.

[22]<u>Id.</u> at 17-18 ¶ 26.

[23]<u>Id.</u> at 18 ¶ 29 (quoting APA § 2.7(a), Docket Entry No. 15, p. 20).

[24]<u>Id.</u> § 31 (quoting APA § 2.7(c), Docket Entry No. 15, p. 20).

> Buyer and Seller Representative shall attempt to resolve any such disagreement in good faith. If Seller Representative and Buyer are unable to resolve any disputes regarding the Earn-Out within 30 days after the date Buyer received Seller Representative's objection to Buyer's calculations or as soon as reasonably practical, then Buyer and Seller Representative agree that the Independent Accountant **shall be engaged** to resolve such dispute.[25]

RSA alleges that "[t]he APA designates Dixon Hughes Goodman LLP (now known as 'Forvis, LLP') as the Independent Accountant,"[26] and provides that the Independent Accountant's determination "shall be final, binding, and conclusive on the Parties and shall be used in the calculation of the amounts due for [the Earn-Out Period]."[27]

RSA alleges that on December 28, 2021, it provided Plaintiffs an Earn-Out Report stating that the Adjusted EBITDA during the Earn-Out Period totaled $2,631,000.00, resulting in an Earn-Out payment of $0.[28] RSA alleges that between December 28, 2021, and January 25, 2022, Collins made no requests for books or records needed to perform his own Earn-Out calculation,[29] but that on January 26, 2022, Collins notified RSA that he disagreed with the Adjusted EBITDA calculation set forth in the Earn-Out Report,

---

[25]Id. at 18-19 ¶ 32 (quoting APA § 2.7(c), Docket Entry No. 15, pp. 20-21).

[26]Id. at 19 ¶ 33 (citing APA § 2.5(a)(iii), Docket Entry No. 15, p. 18 (naming the Independent Accountant)).

[27]Id. § 35 (quoting APA § 2.7(c), Docket Entry No. 15, p. 21).

[28]Id. § 36 (citing Exhibit B, Earn-Out Report, Docket Entry No. 19-2).

[29]Id. at 20 ¶ 38.

provided his own Earn-Out calculation, and demanded an Earn-Out payment of $4,500,000.00.[30]  RSA alleges that on February 4, 2022, it responded to Collins' Notice of Disagreement by stating that it would work to resolve the disagreement through February 25, 2022, and by requesting information to better understand the basis of Collins' disagreement.[31]  RSA alleges that on February 7, 2022, Collins asked for "copious amounts of information and documents concerning its Adjusted EBITDA calculation,"[32] and that Collins asked for additional information on February 14, 2022.[33]  RSA alleges that it responded to Collins on February 14, 2022, and February 18, 2022, by noting that his requests were untimely, but that it nevertheless provided Collins a substantial amount of information, and informed him that if additional information was needed, he could speak with the management team in Spartanburg, South Carolina.[34]

RSA alleges that on May 27, 2022, it sent a letter to Roy Strickland of Dixon Hughes Goodman asking the Independent Accountant to resolve the parties' dispute in accordance with the

---

[30]Id. ¶ 39 (citing Exhibit C, Notice of Disagreement, Docket Entry No. 19-3).

[31]Id. at 21 ¶ 43 (citing Exhibit D, February 4, 2022, Letter to Collins, Docket Entry No. 19-4).

[32]Id. ¶ 45 (citing Exhibit E, February 7, 2022, Letter from Collins to RSA, Docket Entry No. 19-5).

[33]Id. (citing Exhibit F, February 14, 2022, Letter from Collins to RSA, Docket Entry No. 19-6).

[34]Id. at 22 ¶ 46 (citing Exhibit G, Letters to Collins dated February 14, 2022, and February 18, 2022, Docket Entry No. 19-7).

APA Dispute Resolution Procedure.[35]  RSA alleges that on June 2, 2022, an attorney for Sellers' Representative sent a letter objecting to the Independent Accountant's involvement and stating that Sellers' Representative refused to work with the Independent Accountant.[36]  RSA alleges that Sellers' Representative continued to request additional information and documentation, and that RSA provided the requested information.[37]  RSA alleges that Sellers' Representative participated in a video conference with RSA's CFO and other personnel on July 21, 2022,[38] and that the parties' attorneys corresponded between August 3, 2022, and November 22, 2022.[39]

Asserting that the APA includes non-compete provisions,[40] RSA alleges that Plaintiffs violated those provisions by hiring Michael Hall, and that MSD violated those provisions by hiring Deborah Dugan and Judith Collins.[41]

---

[35]Id. at 23 ¶ 50 (citing Exhibit I, May 27, 2022, Letter to Accountant, Docket Entry No. 19-9).

[36]Id. ¶ 51 (citing Exhibit J, June 2, 2022, Letter, Docket Entry No. 19-10).

[37]Id. at 23-24 ¶¶ 52-53 (citing Exhibit K, June 15, 2022, Letter from RSA's counsel to Collins' counsel, Docket Entry No. 19-11).

[38]Id. ¶ 55-56.

[39]Id. ¶ 57 (citing Exhibit L, Docket Entry No. 19-12).

[40]Id. at 25 ¶¶ 59-60 (citing APA §§ 5.1(b)-(c), Docket Entry No. 15, pp. 38-39).

[41]Id. at 25-27 ¶¶ 62-72.

**B.    Procedural Background**

Plaintiffs initiated this action on April 12, 2023, by filing Plaintiffs' Original Petition in the 157th Judicial District Court of Harris County, Texas, Case No. 2023-23133.[42]  On May 16, 2023, RSA filed Defendant Rugged Solutions America, LLC's Notice of Removal ("RSA's Notice of Removal") (Docket Entry No. 1).

On June 28, 2023, Plaintiffs filed Claimants' First Amended Complaint asserting claims for breach of contract and fraud in the inducement.  Plaintiffs allege that RSA breached the APA by

    a.    Directly or indirectly taking steps to reduce the Earn-Out by refusing a sale to Mr. Collins amounting to approximately $1.2 Million;

    b.    Reducing its gross-margins during the Earn-Out period from its historical gross margin;

    c.    Refusing to provide Claimants all necessary documentation in support of the Earn-Out Report; and

    d.    Refusing to allow Claimants reasonable access to [RSA]'s books and records during Claimants' review period.[43]

Plaintiffs allege that RSA fraudulently induced them to enter the APA by making representations knowingly or without knowledge of their truth or falsity, and with the intention of not performing the representations at the time they were made, that they justifiably relied on RSA's representations and suffered injury.[44]

---

[42]Plaintiffs' Original Petition, Exhibit 1 to Defendant Rugged Solutions America, LLC's Notice of Removal, Docket Entry No. 1-2, pp. 5-12.

[43]Claimants' First Amended Complaint, Docket Entry No. 14, pp. 10-11 ¶ 30.

[44]Id. at 11 ¶¶ 32-36.

On July 12, 2023, RSA answered Claimants' First Amended Complaint,[45] denying the allegations underlying Plaintiffs' claims for breach of contract and fraud in the inducement, and asserting counterclaims for breach of contract and declaratory judgment against Plaintiffs and third-party defendants MSD and Collins. RSA alleges that Plaintiffs and Collins have breached the APA by refusing to follow the APA's Dispute Resolution Procedure,[46] and that

> Collins's and MS Distribution's breaches of the APA include, but are not limited to:
>
> (i)   Violating the covenant in Section 5.1(b)(iii) by soliciting, encouraging, causing, or attempting to cause individuals that supplied goods or services to Sellers not to do business with or reduce any part of their business with RSA;
>
> (ii)  Violating the covenant in Section 5.1(c)(i) by hiring or attempting to hire or engage for employment or as an independent contractor Restricted Employees (as the term is defined in the APA) during the Restricted Period and within six months of their employment with RSA; and
>
> (iii) Violating the covenant in Section 5.1(c)(iii) by interfering with RSA's business relationships related to the business.[47]

RSA seeks declaratory judgment that

> (i)   [Collins] was required to comply with the APA Dispute Resolution Procedure in pursuing his

---

[45]Answer and Counterclaim of Rugged Solutions America, LLC to Plaintiffs' First Amended Complaint, Docket Entry No. 19.

[46]Id. at 29 ¶ 82.

[47]Id. at 29-30 ¶ 83.

challenge to the Adjusted EBITDA calculation in the
Earn Out Report.

(ii) [Collins] failed and refused to comply with the APA
Dispute Resolution Procedure.

(iii) As a result of [Collins'] refusal to abide by the
contractual procedures set forth for disputing the
Adjusted EBITDA calculation, [Plaintiffs] have
waived their ability to dispute RSA's Adjusted
EBITDA calculation.

(iv) Pursuant to the APA, the Adjusted EBITDA
calculation of $2.63M as stated in the Earn-Out
Report is "final, binding, and conclusive on the
Parties and shall be used in the calculation of the
amounts due under . . . [§] 2.7."[48]

Alternatively, RSA seeks a declaration that:

(i) [Collins] was required to comply with the APA
Dispute Resolution Procedure in pursuing his
challenge to the Adjusted EBITDA calculation in the
Earn Out Report.

(ii) [Collins] failed and refused to comply with the APA
Dispute Resolution Procedure.[49]

On October 27, 2023, RSA filed the pending Motion for Partial
Judgment (Docket Entry No. 26), seeking judgment on the pleadings
for its declaratory judgment counterclaim. On November 17, 2023,
Counterclaim Defendants filed Claimants' Response to Respondent's
Partial Motion for Summary Judgment (Docket Entry No. 27), and on
December 1, 2023, RSA replied by filing Defendant/Counterclaim
Plaintiff Rugged Solutions America, LLC's Reply in Support of
Motion for Partial Judgment on the Pleadings ("RSA's Reply")
(Docket Entry No. 30).

---

[48]Id. at 28 ¶ 77.

[49]Id. ¶ 78.

## II. **RSA'S Motion for Partial Judgment on the Pleadings**

"RSA asks the Court to grant judgment on the pleadings on its Counterclaim for Declaratory Judgment, as other courts applying Delaware law have done where a party has refused to participate in a contractually agreed upon dispute resolution process before an independent accountant."[50]

> Specifically, RSA requests a declaration that the Adjusted EBITDA calculation of $2.63M as stated in the Earn-Out Report is "final, binding, and conclusive." Upon entry of such a declaration, this Action would continue for the Court to adjudicate Sellers' claim that RSA breached the purchase agreement by allegedly taking actions for the primary purpose of reducing or eliminating the Earn-Out as well as RSA's additional counterclaims and third-party claims. In the alternative, RSA seeks a declaration that RSA's Adjusted EBITDA calculation must receive a "final, binding" and "conclusive" determination by the independent accountant, during which the remainder of this action be stayed until that process is complete.[51]

Plaintiffs respond that RSA's Motion for Partial Judgment should be denied because they have alleged that RSA breached the APA in ways that affect the Earn-Out, and because legal questions concerning the breaches must be determined before the Earn-Out can be calculated.[52]

---

[50]RSA's Motion for Partial Judgment, Docket Entry No. 26, p. 6.

[51]Id. at 6-7.

[52]Claimants' Response to Respondent's Partial Motion for Summary Judgment, Docket Entry No. 27, pp. 4-5 ¶¶ 1-3. Plaintiffs object that RSA has filed a motion for summary judgment before discovery has been conducted. Id. at 5 ¶ 4. But this objection is inapposite because RSA is not seeking summary judgment.

RSA replies that its

> [m]otion should be granted because both Delaware law and
> the unambiguous terms of the parties' APA dictate that
> Sellers should not be rewarded for their obstinate
> refusal to participate in a contractually agreed to
> dispute resolution procedure. The Court should hold that
> Sellers have waived their right to contest RSA's Adjusted
> EBITDA calculation, or, in the alternative, refer the
> dispute over RSA's calculation of actual adjusted EBITDA
> to the Independent Accountant before the parties
> adjudicate any other claims or disputes before the
> Court.[53]

## A.   Standards of Review

RSA's Motion for Partial Judgment on the Pleadings is governed
by Federal Rule of Civil Procedure 12(c).   Rule 12(c) states that
"[a]fter the pleadings are closed — but early enough not to delay
trial — a party may move for judgment on the pleadings."  "A motion
brought pursuant to [Rule] 12(c) is designed to dispose of cases
where the material facts are not in dispute and a judgment on the
merits can be rendered by looking to the substance of the pleadings
and any judicially noticed facts."  Great Plains Trust Co. v.
Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002)
(quoting Hebert Abstract Co. v. Touchstone Properties, 914 F.2d 74,
76 (5th Cir. 1990) (per curiam)).  "Pleadings should be construed
liberally, and judgment on the pleadings is appropriate only if
there are no disputed issues of fact and only questions of law
remain."  Id. (citing Hebert, 914 F.2d at 76).

---

[53]RSA's Reply, Docket Entry No. 30, p. 4.

"The Rule 12(c) standard is the same as that applied to
Rule 12(b)(6)." <u>Vardeman v. City of Houston</u>, 55 F.4th 1045, 1049
(5th Cir. 2022).  To withstand a Rule 12(b)(6) motion, plaintiffs
must plead "enough facts to state a claim to relief that is
plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct.
1955, 1974 (2007).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949
(2009) (citing <u>Twombly</u>, 127 S. Ct. at 1965).  "Where a complaint
pleads facts that are 'merely consistent with' a defendant's
liability, it 'stops short of the line between possibility and
plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 127
S. Ct. at 1966).  Courts must accept the factual allegations of the
complaint as true, view them in a light most favorable to the
plaintiff, and draw all reasonable inferences in the plaintiff's
favor. <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir.
2001), <u>cert. denied sub nom</u> <u>Cloud v. United States</u>, 122 S. Ct. 2665
(2002).  When considering Rule 12(b)(6) motions courts are "limited
to the complaint, any documents attached to the complaint, and any
documents attached to the motion to dismiss that are central to the
claim and referenced by the complaint." <u>Lone Star Fund V (U.S.),</u>
<u>L.P. v. Barclays Bank PLC</u>, 594 F.3d 383, 387 (5th Cir. 2010)
(citing <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99
(5th Cir. 2000)).

-15-

**B.   Analysis**

    1.   <u>The APA Is Governed by Delaware Law</u>

Citing § 8.3 of the APA, RSA argues that Delaware law governs its declaratory judgment claim pursuant to the APA's choice-of-law provision.[54]  In pertinent part § 8.3(a) of the APA states that

> [t]his Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of Laws of any jurisdiction other than those of the State of Delaware.[55]

Plaintiffs respond that RSA "ignores both the law and fact questions pertaining to enforcement of the choice of law provision. Before the construction of the APA may be construed in favor of either party, the issue of the enforcement of the choice of law provision must be resolved."[56]

In diversity cases such as this, federal courts "apply state substantive law and federal procedural law." <u>Hanna v. Plumer</u>, 85 S. Ct. 1136, 1141 (1965) (citing <u>Erie Railroad Co. v. Tompkins</u>, 58 S. Ct. 817 (1938)).  "Under Texas law, the substantive law of the state chosen by the parties to govern their contractual rights and duties will be applied unless the chosen state has no substantial

---

[54]RSA's Motion for Partial Judgment, Docket Entry No. 26, p. 17.

[55]APA § 8.3(a), Docket Entry No. 15, p. 52.

[56]Claimants' Response to Respondent's Partial Motion for Summary Judgment, Docket Entry No. 27, p. 4 ¶ 2.

relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." <u>United States ex rel. Varco Pruden Buildings v. Reid & Gary Strickland Co.</u>, 161 F.3d 915, 919 (5th Cir. 1998) (citing <u>DeSantis v. Wackenhut Corp.</u>, 793 S.W.2d 670, 677 (Tex. 1990), <u>cert. denied</u>, 111 S. Ct. 755 (1991)).

Plaintiffs argue that RSA ignores both law and fact questions pertaining to enforcement of the choice of law provision, but fail to articulate any such questions.[57]   Plaintiffs allege that RSA is a Delaware limited liability company,[58] thus Delaware has a substantial relationship to the parties' transaction.   Plaintiffs fail to argue that the APA's choice of law provision is ambiguous or unenforceable, or that the law of any state other than Delaware governs the APA.   Moreover, Plaintiffs rely on Delaware law throughout their brief.[59]  Because the breach of contract claims and counterclaims asserted in this action are all based on the APA, and because Plaintiffs have failed to advance any reason why the APA's choice of law provision should not be enforced, the court concludes that provision should be enforced and therefore that Delaware law governs the APA.

---

[57]<u>Id.</u>

[58]Claimant's First Amended Complaint, Docket Entry No. 14, p. 1 ¶ 3.

[59]<u>See</u> Claimants' Response to Respondent's Partial Motion for Summary Judgment, Docket Entry No. 27, pp. 15 ¶ 30, 19-20 ¶¶ 40, 42.

2.   <u>RSA's Cause of Action for Declaratory Judgment</u>

RSA's pleading does not identify a legal basis for its counterclaim seeking declaratory judgment.[60]  However, both RSA and Plaintiffs acknowledge that in a diversity case such as this one claims for declaratory judgment must be brought under the Federal Declaratory Judgment Act.[61]   <u>See</u> <u>Collins v. National Football League</u>, 566 F. Supp. 3d 586, 602-03 (E.D. Tex. 2021) ("When a declaratory judgment action filed in state court is removed to federal court . . . courts analyze claims under the federal Declaratory Judgment Act.").   In pertinent part the Federal Declaratory Judgment Act states that

> [i]n a case of actual controversy within its jurisdiction, [except in various circumstances which do not exist here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).   "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."   Fed. R. Civ. P. 57.   The Federal Declaratory Judgment Act does not create a substantive cause of action; it merely establishes a procedural device that allows a party to obtain early adjudication of an actual controversy arising under

---

[60]Answer and Counterclaim of Rugged Solutions, America, LLC to Claimants' First Amended Complaint, Docket Entry No. 19, pp. 27-29 ¶¶ 75-78.

[61]<u>See</u> RSA's Motion for Partial Judgment, Docket Entry No. 26, p. 17; Claimants' Response to Respondent's Partial Motion for Summary Judgment, Docket Entry No. 27, p. 13 ¶¶ 24-25.

other substantive law.  See Smitherman v. Bayview Loan Servicing, LLC, 727 F. App'x 787, 792 (5th Cir. 2018) (per curiam) (citing Harris County, Texas v. MERSCORP, Inc., 791 F.3d 545, 552 (5th Cir. 2015)).  The Act is an authorization and not a command, and allows federal courts broad, but not unfettered, discretion to grant or refuse declaratory judgment.  See Travelers Insurance Co. v. Louisiana Farm Bureau Federation, Inc., 996 F.2d 774, 778 (5th Cir. 1993).

The actual controversy in this case includes the parties' disputes about alleged breaches of the APA.  Accordingly, the court concludes that the Federal Declaratory Judgment Act authorizes it to enter a declaratory judgment regarding application of the APA's dispute resolution provision, if appropriate.

> (a) RSA is Not Entitled to Declaration that Plaintiffs Have Waived Their Objections to RSA's Adjusted EBITDA Calculation

Asserting that "[t]he unambiguous terms of the APA provide that the Independent Accountant — not this Court — should resolve the parties' disagreement over the Adjusted EBITDA calculation,"[62] RSA argues that it is entitled to judgment as a matter of law that Plaintiffs waived their ability to dispute RSA's Adjusted EBITDA calculation of $2,630,000.00, by refusing to submit their Adjusted EBITDA calculation dispute to the Independent Accountant as

---

[62]RSA's Motion for Partial Judgment, Docket Entry No. 26, p. 16.

required by the APA.[63]  Citing <u>Amirsaleh v. Board of Trade of City
of New York, Inc.</u>, 27 A.3d 522, 529 (Del. 2011), RSA argues that
"[i]t is well settled in Delaware that a party may waive
contractual requirements or conditions."[64]

Plaintiffs respond that

> [t]he evidence relied on by Respondents indicates that
> Claimants neither waived nor intended to waive their
> rights to dispute the Earn-Out.  <u>See</u> ECF. No. 19 at
> Exhibit H (May 17, 2022 Letter to Respondents).
> Claimant[s] objected to the Earn-Out calculations, and
> Claimant[s] objected to turning the matter over to an
> "Independent Accountant" who was no longer independent.
> <u>See</u> ECF No. 26 Rspdt's Mtn at ¶¶ 13-21.  Additionally,
> Claimants — when objecting to Respondent's Earn-Out
> calculation — expressly stated what the Earn-Out should
> have and would have been turned over to an independent
> accountant to resolve if not for Respondent's numerous
> breaches to the APA and failure to comply with its own
> representations.  <u>See</u> ECF. No. 19 at Exhibit H. (May 17,
> 2022 Letter to Respondents)[.] As such, Respondents have
> failed to demonstrate Claimants' waived [their] rights to
> dispute the Earn-Out.[65]

Both RSA and Plaintiffs cite <u>In re Coinmint, LLC</u>, 261 A.3d 867
(Del. Ch. 2021), for stating the elements of waiver under Delaware
law:[66]

> A party asserting waiver must demonstrate that (1) there
> is a requirement or condition to be waived; (2) the
> waiving party knew of the requirement or condition; and
> (3) the waiving party intended to waive that requirement

---

[63]<u>Id.</u>  <u>See also</u> <u>id.</u> at 19-22.

[64]<u>Id.</u> at 19.

[65]Claimants' Response to Respondent's Partial Motion for
Summary Judgment, Docket Entry No. 27, pp. 15-16 ¶ 32.

[66]<u>See</u> <u>id.</u> at 15 ¶ 31; RSA's Reply, Docket Entry No. 30, p. 13.

or condition.  The facts relied upon to prove waiver must
be unequivocal.

Id. at 893 (quoting AeroGlobal Capital Management, LLC v. Cirrus
Industries, Inc., 871 A.2d 428, 444 (Del. 2005)).  Asserting that
"Delaware's standard for proving waiver is 'quite exacting,'" id.
(quoting AeroGlobal, 871 A.2d at 445), the court explained that
"[w]aiver is a unilateral action and depends on what one party
intended to do."  Id. & n. 165(citing, inter alia, George v. Frank
A. Robino, Inc., 334 A.2d 223, 224 (Del. 1975) (per curiam), for
stating that "[i]ntention forms the foundation of the doctrine of
waiver, and it must clearly appear from the evidence").

Asserting that "[h]ere, the 'right, requirement, or condition
to be waived' is the mechanism by which the parties may dispute the
Adjusted EBITDA calculation under the APA Dispute Resolution
Procedure,"[67] RSA argues that "Sellers do not dispute that the first
element is satisfied.  Seller's arguments that RSA has not
established the second and third elements fail."[68]  RSA argues that

> [f]irst, Sellers "knew of the requirement" that disputes
> over RSA's calculation of the Adjusted EBITDA must be
> referred to the Independent Accountant because (i) they
> agreed to the contractual dispute resolution mechanism
> (see Countercl. Ex. A § 2.7) and (ii) RSA repeatedly
> informed Sellers of such (see Countercl. ¶ 49 and Exs. H,
> K, and L; Ans. ¶ 49).  RSA also attempted to refer the
> dispute to the Independent Accountant on May 27, 2022,
> leaving no doubt that Sellers knew that the APA required
> that the dispute be resolved by the Independent
> Accountant.  See Countercl. Ex. I.

---

[67]RSA's Reply, Docket Entry No. 30, p. 13.

[68]Id.

-21-

Second, Sellers "intended to waive" their right to challenge the Adjusted EBITDA by notifying the Independent Accountant six days later of their "vehement objection" to the Independent Accountant's involvement and their refusal to work with the Independent Accountant to resolve the dispute in contravention of the APA Dispute Resolution Procedure.[69]

RSA thus argues that based on the materials attached to its Counterclaims the "court should find that Sellers waived their right to challenge RSA's Adjusted EBITDA calculation and [that] RSA's Adjusted EBITDA calculation of $2.6M is final, binding, and conclusive on the parties."[70]

RSA alleges that on May 27, 2022, it sent a letter to Roy Strickland of Dixon Hughes Goodman requesting that the Independent Accountant resolve the parties' Adjusted EBITDA dispute in accordance with the APA Dispute Resolution Procedure,[71] and that on June 2, 2022, Seller Representative's counsel sent a letter stating his objection and refusal to work with the Independent Accountant.[72] But the June 2, 2022, letter does not clearly show that Sellers' Representative intended to waive the right to dispute RSA's Adjusted EBITDA calculation.  To the contrary, the June 2, 2022,

---

[69]Id. at 14.

[70]Id. at 15.

[71]Answer and Counterclaim of Rugged Solutions, America, LLC to Plaintiffs' First Amended Complaint, Docket Entry No. 19, p. 23 ¶ 51 (citing Exhibit I, May 27, 2022, Letter, Docket Entry No. 19-9).

[72]Id. ¶ 51 (citing Exhibit J, June 2, 2022, Letter, Docket Entry No. 19-10).

letter states an "unwillingness to proceed with Dixon Hughes at this time" due to RSA's failure to provide "full access to existing books and records that relate to the earn-out calculations;"[73] the letter does not clearly state an unwillingness to proceed with Dixon Hughes at any time.

Whether Sellers' Representative intended to waive the right to dispute RSA's Adjusted EBITDA calculation cannot be resolved on a Rule 12(c) motion for judgment on the pleadings.  Rule 12(c) motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Great Plains Trust, 313 F.3d at 312 (quoting Hebert, 914 F.2d at 76).  Such a motion is useful when all material allegations of facts are admitted in the pleadings and only questions of law remain. Id.  But whether Seller Representative's conduct evidences intent to waive the contractual right to dispute RSA's Adjusted EBITDA calculation is a question of fact, not a question of law that can be decided on the pleadings.  See AeroGlobal, 871 A.2d at 446 (holding that intent to waive a contractual right is a question for the trier of fact).  Accordingly, the court concludes that RSA is not entitled to declaratory judgment that Plaintiffs' right to challenge RSA's Adjusted EBITDA calculation has been waived.

---

[73]Exhibit J, Docket Entry No. 19-10, p. 2.

(b)   RSA is Entitled to Declaration that the Parties'
Dispute Over the Adjusted EBITDA Calculation Must
be Submitted to the Independent Accountant

Alternatively, RSA argues that "Sellers' objection to [its] Adjusted EBITDA calculation must receive a 'final, binding, and conclusive' determination by the Independent Account as provided for under the APA, and any remaining claim shall be stayed until that process is completed."[74]   Citing § 2.7(c) of the APA, RSA argues that its motion seeking declaratory relief should be granted "because the plain language of the APA requires that disputes over RSA's calculations of the Adjusted EBITDA be resolved by the Independent Account,"[75] and because "courts applying Delaware law routinely grant motions for judgment on the pleadings, holding litigants to their pre-dispute, contractual commitment to involve an expert to resolve complex accounting disputes."[76]   In support of this argument RSA cites, <u>inter alia</u>, <u>LDC Parent, LLC v. Essential Utilities, Inc.</u>, No. C.A. N20C-08-127 MMJ CCLD, 2021 WL 1884847, *4-*5 (Del. Super. Ct. April 28, 2021), for rejecting the plaintiff's argument that whether a "disputed item" fell under the contract's definition of "capital expenditure" presented a "legal question of contract interpretation" that prevented the dispute from being referred to an independent accountant because that

---

[74]RSA's Motion for Partial Judgment, Docket Entry No. 26, p. 17.

[75]<u>Id.</u> at 18.

[76]<u>Id.</u> at 19-20.

argument "ignore[d] the plain language" of the agreement and was "nothing more than couching delegable disputes in questions of law." RSA also cites <u>Stone v. Nationstar Mortgage LLC</u>, C.A. No. 2019-0878-KSJM, 2020 WL 4037337, *7-*8 (Del. Ch. July 6, 2020), for rejecting an argument that the parties' disagreement over calculation of a closing payment amount could not be referred to an independent accountant because counterclaims for <u>inter alia</u> specific performance and declaratory relief raised legal issues requiring contract interpretation that was beyond the scope of the independent accountant's expertise and authority.[77]

In pertinent part § 2.7(c) of the APA states that

[i]f Seller Representative disagrees with Buyers' calculations set forth in the Earn-Out Report, Seller Representative shall provide Buyer written notice of such disagreement within 30 days of receipt of Buyer's Earn-Out Report, which must set forth in reasonable detail the nature of Seller Representative's disagreement and Seller Representative's proposed resolution of such disagreement ("**Seller's Earn-Out Calculation**"). Buyer and Seller Representative shall attempt to resolve any such disagreement in good faith. If Seller Representative and Buyer are unable to resolve any disputes regarding the Earn-Out within 30 days after the date Buyer receives Seller Representative's objection to Buyer's calculations or as soon as reasonably practical, then Buyer and Seller Representative agree that the Independent Accountant shall be engaged to resolve such dispute (and only those matters which are in dispute and acting as experts in accounting and not as arbitrators, on a basis consistent with this Agreement). If issues are submitted to the Independent Accountant for resolution, (i) Seller Representative and Buyer shall furnish or cause to be furnished to the Independent Accountant such work papers and other documents and information relating to the disputed issues as the Independent Accountant may request

---

[77]<u>Id.</u> at 20-22.

and are available to the party or its agents and shall be afforded the opportunity to present to the Independent Accountant any material relating to the disputed issues and to discuss the issues with the Independent Accountant; (ii) the Independent Accountant may review only those items and amounts specifically set forth and objected to by the Parties in the Seller's Earn-Out Calculation and Buyer's Earn-Out Report, and resolve the dispute with respect to such items in dispute only in accordance with the principles and definitions set forth in the Agreement; (iii) the determination by the Independent Accountant, as set forth in a written notice to be delivered to Seller Representative and Buyer within 30 days of the submission to the Independent Accountant of the issues remaining in dispute or as soon as reasonably practical, shall be final, binding and conclusive on the Parties and shall be used in the calculation of the amounts due for said period under this Section 2.7. . .[78]

Both parties' pleadings state that RSA provided the Earn-Out Report to Sellers' Representative on December 27, 2021, and that Sellers' Representative provided RSA a notice of disagreement containing his own EBITDA calculation on January 26, 2022.[79]  The parties' pleadings also show that although they spent months exchanging information, they have been unable to resolve their disagreement regarding calculation of the Adjusted EBITDA.[80]  RSA alleges that

---

[78]APA § 2.7(c), Docket Entry No. 15, pp. 20-21.

[79]Claimants' First Amended Complaint, Docket Entry No. 14, p. 6, ¶ 17; Answer and Counterclaim of Rugged Solutions, America, LLC to Plaintiffs' First Amended Complaint, Docket Entry No. 19, pp. 19 ¶ 36 (alleging Earn-Out Report was provided to Collins on December 28, 2021 (citing Exhibit B, Docket Entry No. 19-2)), and p. 20 ¶ 39 (alleging Collins noticed RSA that he disagreed with its Adjusted EBITDA calculation on January 26, 2022, citing Exhibit C, Docket Entry No. 19-3)).

[80]Claimants' First Amended Complaint, Docket Entry No. 14, pp. 6 ¶ 17, 8-10 ¶¶ 22, 25-26 (describing Plaintiffs' alleged
(continued...)

on May 27, 2022, it sent a letter to Dixon Hughes Goodman asking the Independent Accountant to resolve the parties' dispute in accordance with the APA Dispute Resolution Procedure, and that on June 2, 2022, counsel for Sellers' Representative sent a letter stating his objection and refusal to work with the Independent Accountant "at this time" due to RSA's failure to provide "full access to existing books and records that relate to the earn-out calculations."[81]

Plaintiffs do not dispute that they have declined to submit their disagreement with RSA over the Adjusted EBITDA calculation to the Independent Accountant.  Instead, they argue that since they

> have never received sufficient and necessary documentation from Respondent in order for Claimants to confirm the Adjusted EBITDA and because of [RSA's] refusal to comply with Section 2.7 of the APA, Claimants' claims are not simply an accounting dispute.  As such, the attempt by [RSA] to force a review by the Independent Accountant is premature.  Further, Claimants' claims are not simply a disagreement with [RSA]'s accounting, but rather, that [RSA] has substantively and materially breached the APA.[82]

---

[80](...continued)
attempt to obtain information from RSA); Answer and Counterclaim of Rugged Solutions, America, LLC to Plaintiffs' First Amended Complaint, Docket Entry No. 19, pp. 20-25 ¶¶ 42-59 (describing RSA's alleged attempt to respond to Collins' requests for information).

[81]Answer and Counterclaim of Rugged Solutions, America, LLC to Plaintiffs' First Amended Complaint, Docket Entry No. 19, p. 23 ¶ 51 (citing Exhibit J, June 2, 2022, Letter, Docket Entry No. 19-10).

[82]Claimants' Response to Respondent's Partial Motion for Summary Judgment, Docket Entry No. 27, p. 11 ¶ 17.

Plaintiffs also argue that their breach of contract claims must be resolved before the dispute with RSA over calculation of the Adjusted EBITDA is submitted to the Independent Account,[83] and that the Independent Accountant named in the APA may no longer be independent.[84]

Asserting that the issues presented in this matter are issues reserved for an arbitrator of legal issues, and quoting <u>Knight Broadband, LLC v. Knight</u>, C.A. No. N21C-07-076 EMD CCLD, 2022 WL 1788855, *14-*16 (Del. Super. Ct. June 2, 2022), Plaintiffs argue that "Delaware courts have found that 'an Independent Accountant is an expert and not an arbitrator even when the language of the Purchase Agreement does not expressly state so.'"[85]   Plaintiffs argue that

> if the Court proceeds under Delaware law, then the appropriate case is <u>Knight.</u>   In <u>Knight</u> the plaintiff purchased company assets from defendant in an asset purchase agreement.  The purchase agreement contained a provision that governed the purchase price including an earn-out provision, which included an obligation for the Buyer to provide certain supporting documentation, and how the parties are to resolve dispute[s] related to the earn[-]outs.  The Court held the plaintiff's claims raised issues of law and not computation, and was therefore not appropriate to be turned over to the contractual dispute resolution process of an Accountant Expert, when plaintiff argued that the Buyer's obligations to provide an earn-out report and its supporting documentation were breaches of the purchase agreement.

---

[83]<u>Id.</u> at 14 ¶ 27.

[84]<u>Id.</u> at 17-18 ¶¶ 36-37.

[85]<u>Id.</u> at 19 ¶ 40.

Similarly, in the present matter, the Claimant has alleged that the Respondents have committed a material breach of their duties under the APA by failing to provide supporting documentation. <u>See</u> ECF No. 19 at Exhibit H. (May 17, 2022[,] Letter to Respondents). Additionally, the Claimant[s have] alleged that the Respondents took actions which intentionally reduced the Earn-Out by refusing a sale, a material breach of its duties to take no action which would reduce the Earn-Out, and which is not simply a matter of calculation. <u>See</u> ECF. No. 19 at Exhibit H (February 25, 2022[,] Letter to Respondents). . .

Since the Claimants' disputes are not simply relating to the calculation of the Earn-Out, but rather that the Respondent has committed multiple material breaches of their legal obligations under the APA, in addition to disputing the independent nature of the Independent Accountant there are sufficient fact questions to be determined which must be resolved by the Court before any dispute concerning the Earn-Out calculation will be ripe for review by the Independent Accountant. As such, the Respondents['] motion should be denied.[86]

But Plaintiffs' arguments are misplaced because RSA is not seeking judgment on the pleadings for Plaintiffs' breach of contract or fraudulent inducement claims.

To the contrary, RSA seeks only a declaration that the Adjusted EBITDA calculation of $2.63M as stated in the Earn-Out report is "final, binding and conclusive" or, if the Court does not find a waiver, a declaration that the Independent Accountant must assess that calculation now. After that, this Action would continue before this Court on the issues of whether RSA breached the purchase agreement and, if so, what Sellers' damages are, as well as RSA's additional counterclaims and third-party claims.[87]

---

[86]<u>Id.</u> at 20-21 ¶¶ 42-44.

[87]RSA's Reply, Docket Entry No. 30, p. 6.  <u>See also</u> Answer and Counterclaim of Rugged Solutions, America, LLC to Plaintiffs' First Amended Complaint, Docket Entry No. 19, pp. 27-29 ¶¶ 75-78; RSA's Motion for Partial Judgment, Docket Entry No. 26, pp. 13 n. 9, 15 n. 10.

Plaintiffs' reliance on Knight, 2022 WL 1788855, at *14-*16, is also misplaced.  Plaintiffs' discussion of Knight focuses on the court's decision to retain the parties' breach of contract and fraudulent inducement claims, but fails to mention that the Knight court dismissed the parties' claims "premised on an accounting issue" for lack of jurisdiction, holding that those disputes had to be resolved by an accounting expert pursuant to the dispute resolution provision in the parties' agreement.  Id. at *16-*17. Knight therefore supports RSA's argument that the parties' dispute over calculation of the Adjusted EBITDA should be referred to the Independent Accountant pursuant to the dispute resolution provision in the APA.  Moreover, this holding in Knight is consistent with holdings in other cases cited by RSA but either not mentioned or not addressed by Plaintiffs.  See e.g., Stone, 2020 WL 4037337, at *6, *10 (granting motion for judgment on the pleadings on a claim to enforce an alternative dispute resolution provision as to "accounting methodology disputes" despite the existence of breach of contract claims that required "further development of the factual record"); LDC Parent, 2021 WL 1884847, at *5 (granting motion for judgment on the pleadings that the parties had to submit a dispute regarding the propriety of a capital expenditure deduction to an independent accountant and ordering the parties "to meet and confer regarding further proceedings to address [the] breach of contract claim").

-30-

Plaintiffs acknowledge that their "inducement and material breach claims are both independent of the Earn-Out determination."[88] Plaintiffs nevertheless argue that the determination of these claims "will have an effect on the Earn-Out calculations and any review by an Independent Accountant."[89]   But missing from Plaintiffs' briefing is any explanation of how or why resolution of their breach of contract and/or fraudulent inducement claims would effect the Independent Accountant's review of the Adjusted EBITDA calculations performed by RSA and by Sellers' Representative. Moreover, Plaintiffs' argument that RSA's attempt to force submission of the parties' dispute to the Independent Account would be premature because they have yet to receive sufficient documentation to confirm RSA's calculation is belied both by Seller Representative's January 26, 2022, notice of dispute, which contained his own calculation of Adjusted EBITDA,[90] and by the express terms of the APA, which provide the Independent Accountant authority to request work papers, other documents, and information from both parties.[91]   Accordingly, the court is not persuaded that Plaintiffs' breach of contract and fraudulent inducement claims

---

[88]Claimants' Response to Respondent's Partial Motion for Summary Judgment, Docket Entry No. 27, p. 14 ¶ 29.

[89]Id. at 14-15 ¶ 29.

[90]January 26, 2022, Notice of Disagreement, Exhibit C, Docket Entry No. 19-3, p. 3 (asserting "NEW/CORRECTED EBITDA $7,735,082").

[91]APA § 2.7(c)(i), Docket Entry No. 15, p. 21.

must be decided before the parties' dispute over calculation of the

Adjusted EBITDA may be turned over to the Independent Account.

Acknowledging that "the Independent Accountant is defined

within the APA to be 'Dixon Hughes Goodman LLP,'"[92] Plaintiffs argue

that there is no evidence that the Independent Accountant

identified in the APA is actually independent.[93]  Plaintiffs argue

that

> that entity no longer exists.  Rather, the Independent
> Accountant was bought out by Forvis, LLP.  One would
> first need to research whether Forvis, LLP is truly an
> independent accounting firm after this Court makes a
> determination as to damages due as a result of
> Respondent's breach and fraudulent inducements. However,
> this means that the "Independent Accountant" procedures
> called for in the APA can no longer be performed as the
> accountant identified in the APA is no longer
> "Independent."  The very purpose of the Independent
> Account provisions, which is to have a totally
> independent party with no affiliation to either party has
> been entirely and substantially frustrated to the point
> that enforcing that provision would work an injustice on
> Claimants. . . The foregoing is also a fact issue which
> must be resolved by the Court before the dispute
> concerning the calculation of the Earn-Out may be
> determined pursuant to the Independent Accountant dispute
> resolution process agreed to in the APA.  Therefore, the
> Respondent's motion to turn this matter over to the
> Independent Accountant should be denied.[94]

Contrary to Plaintiff's argument, this is not a case in which

the Independent Accountant no longer exists, only that it now goes

by a different name.  Plaintiffs' amended complaint contains no

factual allegations capable of proving that Forvis, LLP is not

---

[92]Claimants' Response to Respondent's Partial Motion for
Summary Judgment, Docket Entry No. 27, p. 18 ¶ 37.

[93]Id. at 17-18 ¶¶ 36-37.

[94]Id. at 18 ¶ 37.

independent of the parties. Plaintiffs' briefing contains no explanation as to why Forvis, LLP's purchase of Dixon Hughes Goodman LLP, should mean that the Independent Account named in the APA is no longer independent, or that enforcing the Independent Accountant provisions of the APA would work an injustice to them. Moreover, Plaintiffs' briefing fails to cite any case law holding that a dispute resolution provision may be rendered unenforceable because the designated independent accountant changes the name under which it does business. The court is therefore not persuaded that whether the Independent Account agreed to in the APA remains independent presents a fact issue that must be resolved before the parties' dispute concerning the calculation of the Adjusted EBITDA may be submitted to the Independent Accountant.

Plaintiffs do not dispute that they disagree with RSA's calculation of the Adjusted EBITDA, and that the APA unambiguously requires such disputes to be resolved by the Independent Accountant.[95] Plaintiffs argue that RSA's attempt "to force a review by the Independent Account is premature [because their] claims are not simply a disagreement with [RSA]'s accounting, but rather, that [RSA] has substantively and materially breached the APA."[96] Plaintiffs' argument conflicts with well-settled Delaware case law holding that the existence of contract and/or tort claims do not negate the parties' agreement that an independent accountant

---

[95]See id. at 9-11 ¶¶ 14-17 (citing APA § 2.7, Docket Entry No. 15, pp. 20-21).

[96]Id. at 11 ¶ 17.

resolve disputes that fit within the contractual grant of authority to the independent accountant.  See Stone, 2020 WL 4037337, at *8 ("Delaware courts have rejected contractual parties' efforts to plead around the scope of a third-party decision-maker's authority by couching delegable duties in questions of law.").  Accordingly, the court concludes that RSA is entitled to declaratory judgment on the pleadings under Rule 12(c) that the parties' dispute over their competing calculations of Adjusted EBITDA must be submitted to the Independent Account pursuant to the dispute resolution provision in § 2.7 of the APA.

### III.  Conclusions and Order

For the reasons stated above in § II.B.2(a), the court concludes that RSA is not entitled to judgment on the pleadings under Rule 12(c) that Plaintiffs have waived their right to dispute RSA's calculation of Adjusted EBIDTA.

For the reasons stated above in § II.B.2(b), the court concludes that RSA is entitled declaratory judgment on the pleadings under Rule 12(c) that the parties' dispute over their competing calculations of Adjusted EBITDA must be submitted to the Independent Accountant pursuant to the dispute resolution provision in § 2.7 of the APA.  The parties are hereby **ORDERED TO SUBMIT THEIR DISPUTE OVER CALCULATION OF ADJUSTED EBITDA TO THE INDEPENDENT ACCOUNTANT NAMED IN THE APA WITHIN THIRTY (30) DAYS.**

Accordingly, Defendant/Counterclaim Plaintiff Rugged Solutions America, LLC's Motion for Partial Judgment on the Pleadings and Brief in Support, Docket Entry No. 26, is **GRANTED in PART** and **DENIED in PART**.

This action is **STAYED** pending resolution of the parties' dispute over the calculation of Adjusted EBITDA by the Independent Accountant.

The parties are **ORDERED** to submit a Joint Status Report on March 1, 2024, and every 60 days thereafter.

**SIGNED** at Houston, Texas, this 5th day of January, 2024.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE